# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

IN RE:                                §
                                      §
CHRIST HEALING CHURCH                 §
                                      §        CASE NO.  10-35919-H4-11
DEBTOR                                §
                                      §        CHAPTER 11
                                      §
                                      §

## DEBTOR'S DISCLOSURE STATEMENT

Christ Healing Church
9915 Belknap Road
Sugar Land, Texas 77478


Calvin Braun
Orlando & Braun, LLP
3401 Allen Parkway, Suite 101
Houston, Texas 77019
(713) 521-0800
(713) 521-0842 fax

ATTORNEYS FOR THE DEBTOR


**March 8, 2011**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **CHRIST HEALING CHURCH** | § | CASE NO.  10-35919-H4-11 |
| | § | |
| **DEBTOR** | § | **CHAPTER 11** |
| | § | |
| | § | |

## DEBTOR'S DISCLOSURE STATEMENT

### I. INTRODUCTION

Christ Healing Church (referred to hereinafter as "Healing" or the "Debtor"), filed a voluntary petition for reorganization under Chapter 11 or Title 11 of the United States Code, 11 U.S.C., § 101 et. seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "Bankruptcy Court") on July 12, 2010, (the "Filing Date"). The Chapter 11 case is pending before the Honorable Jeff Bohm, United States Bankruptcy Judge, under Case No. 10-35919-H4-11. The Debtor has continued to operate its business as a Debtor-in-Possession pursuant to Section 1108 of the Bankruptcy Code since the Filing Date.

ALL INITIALLY CAPITALIZED WORDS IN THIS  DISCLOSURE STATEMENT SHALL HAVE THE SAME DEFINITIONS PROVIDED FOR IN ARTICLE I OF THE PLAN.

CERTAIN STATEMENTS IN THIS DISCLOSURE STATEMENT BECOME APPLICABLE ONLY WHEN, AND IF, THIS  DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT.  WHEN AND IF THIS DISCLOSURE STATEMENT IS APPROVED BY THE BANKRUPTCY COURT, YOU WILL BE RECEIVING FURTHER NOTICE OF SUCH APPROVAL.

THE APPROVAL BY THE BANKRUPTCY COURT OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTY OF THE ACCURACY AND COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

The Debtor's Disclosure Statement, as further amended or modified (also known as "Disclosure Statement" herein) is provided pursuant to Section 1125 of the Bankruptcy Code to all of Debtor's known Creditors, Interest Holders, and other parties-in-interest in connection with the solicitation of acceptance of the Plan of Reorganization (the also known as the "Plan" herein).

1

The purpose of this Disclosure Statement is to provide such information as will enable a hypothetical, reasonable investor typical of the holders of such claims to make an informed judgment in exercising his, her or its rights either to accept or reject the Plan. A copy of the Debtor's Plan is being provided with this Disclosure Statement and is attached to this Disclosure Statement as Exhibit "A".

Only those Creditors and Interest Holders whose claims are impaired may vote on the acceptance or rejection of the Plan. A Claim is deemed not impaired by a Plan if the Plan provides for any of the following methods of treatment with respect to the claim: (1) the right of the creditor under its claim are unaltered by the Plan, (2) any defaults by the Debtor is cured, the original maturity date is reinstated, the creditor under its claim are thereafter unaltered, or (3) the creditor is paid in full amount its allowed claim on the effective date of the Plan. 11 U.S.C. §1124. If a claim or interest is not impaired, it is treated legally as not being adversely affected by the Plan. Therefore, the holder of the unimpaired claim or interest does not vote on the Plan.

Your acceptance of the Plan is important. In order for the Plan to be deemed "accepted" by Creditors and Interest Holders, at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims and fifty-one percent (51%) in number of Allowed Claims voting in each class must accept the Plan.

Any Ballots received after the Voting Deadline will not be counted (unless otherwise ordered by the Bankruptcy Court). Ballots that are received after the Voting Deadline may not be used in connection with the Debtor's request for confirmation of the Plan or any modification thereof, except to the extent allowed by the Bankruptcy Court.

After carefully reviewing this Disclosure Statement and all exhibits and schedules attached hereto please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.

BALLOTS SHOULD BE MARKED, SIGNED, DATED AND RETURNED SO THAT THEY ARE STAMPED AND/OR FAXED AS HAVING BEEN RECEIVED BY NOT LATER THAN _____ P.M., CENTRAL STANDARD TIME, ON _____ (THE "VOTING DEADLINE") AT THE FOLLOWING ADDRESS AND/OR FAX NUMBER:

CALVIN C. BRAUN
ORLANDO & BRAUN LLP
3401 ALLEN PARKWAY
SUITE 101
HOUSTON, TEXAS 77019
(713) 521-0800
(713) 521-0842 facsimile
calvinbraun@orlandobraun.com

THE DEBTOR BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF ALL CLAIMANTS OF THE DEBTOR AND, CONSEQUENTLY, THE DEBTOR URGES ALL CLAIMANTS TO VOTE TO ACCEPT THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED BY THE DEBTOR'S MANAGEMENT, UNLESS SPECIFICALLY STATED TO BE FROM OTHER SOURCES.

NO REPRESENTATIONS CONCERNING THE DEBTOR ARE AUTHORIZED BY THE DEBTOR OTHER THAN THOSE SET FORTH IN THIS DISCLOSURE STATE- MENT.  THE DEBTOR RECOMMENDS THAT ANY REPRESENTATION OR INDUCE- MENT MADE TO SECURE YOUR ACCEPTANCE OR REJECTION OF THE PLAN WHICH IS NOT CONTAINED IN THIS DISCLOSURE STATEMENT NOT BE RELIED UPON BY YOU IN REACHING YOUR DECISION ON HOW TO VOTE ON THE PLAN. ANY REPRESENTATION OR INDUCEMENT MADE TO YOU NOT CONTAINED HEREIN SHOULD BE REPORTED TO THE ATTORNEYS FOR THE DEBTOR WHO SHALL DELIVER SUCH INFORMATION TO THE BANKRUPTCY COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THIS DISCLOSURE STATEMENT CONTAINS ONLY A SUMMARY OF THE PLAN.  THE PLAN WHICH ACCOMPANIES THIS DISCLOSURE STATEMENT IS AN INTEGRAL PART OF THIS DISCLOSURE STATEMENT, AND EACH CREDITOR IS URGED TO REVIEW THE PLAN PRIOR TO VOTING ON IT.

DEBTOR MAKES NO REPRESENTATIONS WITH RESPECT TO THE EFFECTS OF TAXATION (STATE OR FEDERAL) ON THE INTEREST HOLDERS OR CREDITORS WITH RESPECT TO THE IMPACT OF THE PLAN UPON THEM, OF THE TREATMENT OF THEIR CLAIMS OR INTERESTS UNDER THE PLAN, AND NO SUCH REPRESENTATIONS ARE AUTHORIZED BY DEBTOR.  CREDITORS AND INTEREST HOLDERS ARE ENCOURAGED TO SEEK THE ADVICE OF THEIR OWN PROFESSIONAL TAX ADVISORS IF THEY HAVE ANY SUCH QUESTIONS.

CONFIRMATION MAKES THE PLAN BINDING UPON THE DEBTOR AND ALL CREDITORS, INTEREST HOLDERS AND OTHER PARTIES-IN-INTEREST, REGARDLESS OF WHETHER THE CLAIM OR INTEREST OF A PARTICULAR CREDITOR OR INTEREST HOLDER HAS ACCEPTED, REJECTED OR ABSTAINED

FROM VOTING ON THE PLAN.  IN ADDITION, PURSUANT SECTION 1141(d)(1)(B) OF THE BANKRUPTCY CODE, CONFIRMATION OF THE PLAN WILL RESULT IN THE TERMINATION OF ALL RIGHTS AND INTERESTS OF CREDITORS AND INTEREST HOLDERS OF DEBTOR EXCEPT AS PROVIDED IN THE PLAN.

## II.  THE CHAPTER 11 CASE

### A.  BACKGROUND

The Debtor is a Texas non-profit corporation created under the laws of the State of Texas on June 19, 1991  pursuant to that certain Articles of Incorporation, as subsequently amended, supplemented and/or restated. The Debtor was created for the purpose of operating and managing the asset of the Debtor. Further, the Debtor provides a place of worship, gather and guidance to the congregation, community and those seeking assistance.

### B.  THE PROPERTY

The property owned by the Debtor is fully described in Exhibit "B" attached hereto.

### C.  EVENTS LEADING TO THE CHAPTER 11 FILING

Christ Healing Church was founded in June 19, 1991 by Victor Adebayo Iyamu  and six other people for the purpose of providing opportunities for Christian witness and worship in our locality thereby promoting spiritual health and advancing the course of the Lord and Savior, Jesus Christ. The Debtor has operated a church located in Sugar Land, Texas for the last 20 years. In February 15, 1996, the Debtor  purchased the property known as 9915 Belknap Road, Sugar Land, Texas, a 6 acres tract of land with several building used by the Debtor for places of worship.  The Debtor sought to construct a new 2 story church facility on the 6 acres tract of land and  sough out contractors to bid on the construction project. The Debtor chose Keaton Construction Company, LLC ("Keaton")  and entered into a contract to design and construct a multi-purpose center. On June 6, 2008 with the assistance of Keaton Construction Company, LLC, who located and assisted in the loan process, a secured loan for $982,000,00 was issued by Foundation Capital Resources, Inc. ("Capital"). Said funds were to be used to payoff the existing loan in the amount of $193,000.00 and the remainder of the funds were to be used to cover the cost and expenses associated with the construction of the multi-purpose center.

Construction had begun but was delayed due to the various contractors, which affected the ability of the Debtor to complete the project timely. A couple of contractors were given funds but never completed the job. This, plus issues as to work quality of Keaton increased the cost of the project and limited the Debtor ability to make payments on construction loan to Capital.

Finally, after numerous requests by the Debtor to Keaton to correct the many problems in the construction of the center, the Debtor chose to terminate Keaton from the project, which at that

4

time was 90% complete. This created a large problem for the Debtor as all draws had been made by Capital and paid to Keaton as such no funds were left to complete the project.

Thereafter, Capital made demands for payment by the Debtor of the delinquent payments and to resume making current payments per the terms of the outstanding promissory note. The Debtor made various attempts with the abatement by Capital of collection proceeding to find a solutions to cure the delinquent payments. The Debtor was unable to find a resolution acceptable to Capital in order to resolve all matters. Capital then post the property for foreclosure in order to seize the property in payment of the outstanding delinquent promissory note.

Therefore, in order to avoid any further loss of assets and to further continue its recovery this Chapter 11 was filed to restructure the Debtor's assets and liabilities..

### D.  **PROFESSIONAL FEES**

<u>Employment of Counsel</u>.  On the Filing Date, the law firm of Orlando & Braun, LLP. ("The Firm") filed its Application to Employ Attorneys (the "Application to Employ The Firm"), accompanied with an Affidavit of Proposed Attorneys and Rule 2016(b) Disclosure.  By order entered on August 4, 2010, the Bankruptcy Court granted Debtor's Application to Employ The Firm and appointed Orlando & Braun, LLP as counsel for the Debtor-in-Possession.


### E. <u>LITIGATION</u>

Pre-Bankruptcy Litigation:   None.

Bankruptcy  Litigation:

<u>Insider, Preference and Fraudulent Conveyance Claims</u>

The Debtor  may investigate the causes of action which include any and all claims, rights and causes of action that have been or could have been brought by or on behalf of the Debtor arising before, on or after the Filing Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action of Debtor or the Estates may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise.  The Debtor  has not attempted to estimate the potential recoveries on such avoidance causes of action.

Additionally, the Debtor shall investigate and determine any and all causes of action, it might have in course of dealings with Keaton on the breach of contract and removal of the mechanic and materials lien presently filed in Fort Bend county.

### III.  SUMMARY OF THE DEBTOR'S PLAN

THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE FULL TEXT OF THE PLAN.

### PLAN

#### A.  TREATMENT OF THE CLASSES UNDER THE PLAN

1.  **Class 1. - Administrative Claims (Not Impaired)**.

Class 1 shall consist of the Allowed Claims entitled to priority under Section 507(a)(1) through (7) of the Bankruptcy Code, including the fees for services rendered and expenses incurred by the court-appointed counsel and other professionals for the Debtor through the Closing Date.

The claims in Class 1 shall be treated in the following fashion:  Each Creditor in Class 1 shall be paid in cash on the Effective Date, if such Creditor's Claim has matured or has been approved or allowed by the Bankruptcy Court, if such approval or allowance is required.  Each Claim requiring approval or allowance of the Bankruptcy Court shall be paid in cash upon approval or allowance by the Bankruptcy Court, unless each such Creditor agrees to a different treatment.  All fees for services rendered and expenses incurred after the Effective Date by court-appointed counsel and other professionals for Debtor shall be paid by the Debtor in the ordinary course of its business without the necessity of filing fee applications or seeking approval or allowance of the Bankruptcy Court. The total amount of post-Filing Date fees and expenses of counsel for the Debtor will depend upon factors which are to a large extent, outside the control of the Debtor, such as the ability of the Debtor and its Creditors to agree on the treatment afforded to Creditors under the Plan and the nature and extent of Pre-Confirmation Hearing legal actions taken by the Debtor's Creditors.  Subject to such uncertainties, it is anticipated that the post-Filing Date fees and expenses of Debtor's counsel incurred prior to the conclusion of the Confirmation Hearing will be approximately $25,000.00.

Additionally, if there are any pre-confirmation trustee quarterly fees, these will be paid upon Confirmation of the Plan.  Further if any post confirmation fees pursuant to 28 U.S.C. § 1930(a)(6) for the third and fourth quarters which will be paid with the proceeds from the operation of the business.  Said U.S. Trustee fees will cease upon the closing of the case by the court.

The Debtor in Possession shall be responsible for the timely payment of the fees incurred pursuant to 28 U.S.C. §1930(a)(6).  After confirmation, the Debtor in Possession shall file with the Court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the U. S. Trustee and provided to the Debtor by the U.S. Trustee.

2.   **Class 2 Secured Claim- Foundation Capital Resources, Inc. (Impaired)**

Class 2 shall consist of the Allowed Secured Claims of Foundation Capital Resources, Inc., loan against the bankruptcy estate pursuant to a promissory note dated June, 6, 2008 and executed by the Debtor as Makers, payable to the order of Foundation Capital Resources, Inc., in the original principal sum of $982,000.00.

The Allowed Secured Claim of Capital, shall be deemed current as to all pre-petition arrearage and shall be cured as of the Effective Date. Said loan has previously converted to permanent financing as per the promissory note terms. The promissory note shall be modified as follows: (1) One month after the Effective Date the monthly payments to Capital shall be $6,000.00 for the first 12 months to allow the debtor some time to develop business and generate income. Thereafter, Capital will increase the monthly installments of $1,000 each year for the next 4 years (e.g. $7,000.00 months 13-24, $8,000 months 25-36, $9,000 months 37-48 and $10,000 months 49-60). Thereafter, upon the expiration of the 5 year stair step payments, the lender shall modify the existing promissory note with a fully amortize the remaining loan balance over 25 years with monthly payments of $9,223.72 each at a 8.5% fixed rate of interest. Further, said previously stated prepayment penalty language contained within the promissory note shall be deleted, null and void upon the Effective Date.

Notwithstanding any provisions to the contrary in the Debtor's Plan, the Debtor's Disclosure Statement or any orders approving Debtor's Plan and Disclosure Statement, Foundation Capital Resources, Inc., shall retain its first priority lien in and against Debtor's real and personal property.

3.   **Class 3.  Secured Claim- Colorado Electric Supply, Ltd   (Impaired)**

Class 3 shall consist of the Allowed Secured Claim of Colorado Electric Supply, Ltd. d/b/a City Electric Supply ("City"), against the bankruptcy estate pursuant to a filed Mechanic's and Materialsman's Lien  dated March 13, 2009 filed withe the real property records of Fort Bend County in the amount of $5,489.63. Said amount of debt is actually $3,019.13 and City shall amend it previously filed proof of claim.

The Allowed Secured Claim of City shall be paid in full over a period of 36 months at a rate of interest of 5% with the first payment of principal and interest being due 30 days after the Effective Date in the amount of $90.50. Said payments shall continue thereafter monthly until paid in full, upon which said lien shall be released by City.

4.   **Class 4.   Partially Secured and Unsecured Claim- Keaton Construction Company, LLC (Impaired)**

Class 4 shall consist of the Disputed Partially Secured and Unsecured Claim of Keaton Construction Company, LLC. ("Keaton"), against the bankruptcy estate pursuant to a filed

7

Mechanic's and Materialsman's Lien  dated February 24, 2009 filed withe the real property records of Fort Bend County in the amount of $224,129.12.

The Debtor believes said proof of claim is inaccurate as to amounts due and believes that Keaton is in breach of it contract as to duties as general contractor. The Debtor shall seek to litigate this matter within the bankruptcy court. Should the bankruptcy court determine that there is an Allowed Secured Claim of Keaton then it shall be paid in full over a period not to exceed 96 months at a rate of interest of 5% with the first payment of principal and interest being due 30 days after the Effective Date. Said payments shall continue thereafter monthly until paid in full, upon which said lien shall be released by Keaton.

5.    **Class 5.  Claims of Nonpriority Unsecured Creditors(Impaired)**.

Class 5 shall consist of all Allowed Nonpriority Claims of Unsecured Creditors. According to the Debtor's Amended Schedules A Through J filed with the Bankruptcy Court, the unsecured claims in Class 5 have been estimated at approximately $15,709.38.

Additionally, any lawsuits filed against the Debtor related to pre-petition claims, to the extent such claims are not covered by insurance, and any allowed claims arising from rejection of executory contracts and unexpired leases will also be included in this class.

Each Unsecured Creditor with an Allowed Unsecured Claim (meaning not listed as contingent, unliquidated or disputed within Schedule F or any amendment filed with the Court or if so classified, then determined by the Court to be an allowed valid claim) in Class 5, will be the payee of the global promissory note, each creditors will be paid a pro-rata amount (the pro-rata portion is determined by dividing the allowed claim of each creditor claim by the total amount of all allowed claims) out of the total sum of $15,709.38. The promissory note in the amount of $15,709.38 shall be created with the Debtor's acting as the disbursing agent. Said promissory note shall have a zero (0%) interest rate and be payable over 60 month period with payments to Class 5 to commence the third month after the Effective Date and continue every 90 days thereafter for the 60 month period. The Debtor shall make the first installment of $296.50 thirty (30) days after the Effective Date and continue monthly payments of $296.50 a month for a total of 60 months. Said monthly payments shall be paid into the checking account set up by the Debtors, and styled as Unsecured Creditors Disbursement Account and Case Number. The Debtor shall be discharged of any and all liability upon the entry of the discharge.

**IN THE EVENT ANY OF THE CREDITORS IN CLASSES 3 AND  4  FAIL TO ACCEPT THE PLAN BY THE REQUISITE MAJORITIES, DEBTOR INTENDS TO INVOKE THE "CRAMDOWN PROVISIONS" OF THE BANKRUPTCY CODE,   PURSUANT TO SECTION 1129(b)(2)(A) FOR SECURED CREDITORS AND PURSUANT TO SECTION 1129(b)(2)(B) FOR UNSECURED CREDITORS,  TO CONFIRM THE PLAN NOTWITHSTANDING THE NON-ACCEPTANCE OF ANY PARTICULAR CLASS.**

Cramdown - If any impaired class of Claims does not vote to accept the Plan, the Court may never less confirm the Plan pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code. If the Court determines that the Plan "does not discriminate unfairly" and id "fair and equitable" to each class of dissenting Creditors and/or Shareholders, the Court may confirm the Plan through "cramdown." The Plan will not discriminate unfairly if no class receives more than it is legally entitled to receive.

With respect to each dissenting class of Unsecured Claims, "fair and equitable" means either: (1) the members of each dissenting impaired class of Unsecured Claims receive property of a value, as of the Effective Date of the Plan, equal to the amount of their Allowed Claims; or (2) the holders of Claims and Interest that are junior to each dissenting impaired class of Unsecured Claims will not receive any property under the Plan. A plan is not fair and equitable to a class of interest if any class of claims is paid more than in full.

Absolute Priority Rule- simply characterized, the absolute priority rule set forth in section 1129(b)(2)(B) of the Bankruptcy Code requires that confirmation obtained by "cramdown" meet either/or test. Either (i) the members of each dissenting impaired class of unsecured claims must receive property of a value, as of the effective date of the plan, equal in the amount to such class members' allowed claim; or (ii) the holders of claims and interest that are junior to each dissenting impaired class of claims must not receive any property under the plan of reorganization. The absolute priority rule applies only in cases where a class of claims or equity interest is both impaired and does not accept the plan. Thus, the absolute priority rule does not apply to all classes of claims and equity interest but only to the dissenting class and classes junior to the dissenting class.

## C. <u>Means for Execution of Plan</u>

Debtor will meet the above described obligations by reducing various cost of operations and continued operations of the church facilities. In addition to the continued contribution income from the congregation.

The Debtor is hereby empowered to take such actions and execute such documents, as may be reasonable and necessary or appropriate to execute and implement the provisions of this Plan, subject to Court approval where required under the Plan.

## IV. <u>ASSETS OWNED BY DEBTOR'S BANKRUPTCY ESTATE</u>

ALL VALUES SET FORTH IN THIS DISCLOSURE STATEMENT ARE
FAIR MARKET VALUES AS DETERMINED BY THE DEBTOR.

### A. <u>Real Property and Improvements</u>

The Debtor owns said real property as set forth in Schedule A of Exhibit B attached hereto.

### B.  Bank Accounts, Office Equipment, and Machinery.

The Debtor had, on the Filing Date, bank accounts, Office Equipment and Machinery totaling approximately $29,093.00.

## V.  INSIDER, PREFERENCE AND FRAUDULENT CONVEYANCE CLAIMS

With respect to non-insiders, the Debtor made payments to vendors within the ninety (90) days preceding the Chapter 11 filing on July 12, 2010 in the ordinary course of its business. These payments would not, in Debtor's opinion, be preferential due to the fact these payments were made in the ordinary course of business to pay recurring monthly obligations.

## VI.  MANAGEMENT

Debtor will  continue to be manage by the existing board and officers on the confirmation date as previous appointed prior to the Filing Date.

## VII.  EXECUTORY CONTRACTS

The Plan seeks to assume all executory contracts not all ready assumed excluding those specifically rejected during the Reorganization Case.

## VIII.  LIQUIDATION AS AN ALTERNATIVE TO THE PLAN PROPOSED

The alternative to a Chapter 11 Plan of Liquidation would be a Chapter 7 liquidation, whereby the assets of the bankruptcy estate would be liquidated and proceeds distributed to the Creditors.  All of the Debtor's assets, except certain unencumbered cash, are encumbered by the liens of its secured creditors. It is estimated by the Debtor that the liquidation value of the Debtor's assets, at this time, is such that proceeds from the sale may not be sufficient to pay-off the Claims of unsecured creditors after the payment to Capital therefore, no distribution would be expected for the Unsecured Claims in Class 5.

The proposed Plan will provide for a greater pay-out to the Creditors than the Chapter 7 liquidation alternative.  Under the Plan, Creditors will receive all of their Claims, whereas, under a Chapter 7 liquidation the Creditors with claims in Class 5 would likely receive nothing.  The Plan yields a far greater return to Creditors than the Chapter 7 liquidation alternative.

The risk to the Creditors is minimal as Debtor has sufficient amount of capital to make the above mentioned payments.

## IX.  TAX EFFECTS

An analysis of federal income tax consequences of the Plan to Creditors, Interest Holders and the Debtor, requires a review of the Internal Revenue Code of 1986 (the "IRS Code"), the

Treasury Regulations promulgated thereunder, judicial authority and current administrative rulings and practice. The Plan and its related tax consequences are complex. Moreover, many of the IRS Code provisions governing the federal income tax issues arising from the Plan have been revised extensively by the Tax Reform Act of 1986, as well as prior legislation, with respect to which regulations have not been issued. The Debtor has not requested a ruling from the Internal Revenue Service ("IRS") with respect to these matters. Accordingly, no assurance can be given as to the IRS' interpretation. Further, the federal income tax consequences to any particular Creditor or Interest Holder may be affected by the nature of the taxable entity. For example, certain types of investors may be subject to special rules. There also may be state, local or foreign tax considerations applicable to each Creditor or Interest Holder.

Each Creditor and Investor is urged to consult its own tax advisor as to the Consequences of the Plan under applicable, Federal, State and Local tax laws.

## X. ACCOUNTING PROCESSES USED AND THE IDENTITY OF THE PERSONS WHO FURNISHED THE INFORMATION

All information in the Plan and this Disclosure Statement has been submitted by the Debtor, unless otherwise indicated. The Debtor's accounting system is on a cash basis and all financial information provided herein is, therefore, based on a cash basis accounting system as opposed to an accrual basis, and all financial information provided herein is, therefore, based on a cash basis accounting system.

PLEASE BE ADVISED THAT THE ABOVE FINANCIAL INFORMATION MAY BE REVIEWED AT THE FOLLOWING PLACES AND TIMES:

1.  Place:     Office of the Clerk of the United States Bankruptcy Court for the Southern District of Texas, Houston Division, 515 Rusk Street, 5th Floor, Houston, Texas 77002.

    Hours:     9:00 a.m. - 12:00 p.m. and 1:00 p.m. - 4:30 p.m., Mondays through Fridays, except for federal holidays.


2.  Place:     Adair & Myers, PLLC, 3120 Southwest Freeway, Ste. 120, Houston, Texas 77007.

    Hours:     9:00 a.m. - 4:30 p.m., Mondays through Fridays, except legal holidays.

Respectfully submitted this 8th day of March, 2011.

CHRIST HEALING CHURCH

By:__/s/ Victor Ade Iyamu_____
        Victor Ade Iyamu, Pres.

OF COUNSEL:

CALVIN BRAUN
ORLANDO & BRAUN LLP
Texas State Bar No. 00783713
3401 Allen Parkway, Ste. 101
Houston, Texas  77019
(713) 521-0800
(713) 521-0842 fax

COUNSEL FOR DEBTOR

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-35919-H4-11 |
| CHRIST HEALING CHURCH | § | |
| | § | |
| Debtor | § | |
| | § | CHAPTER 11 PROCEEDING |
| | § | |
| | § | |

## DEBTOR'S PLAN OF REORGANIZATION

Christ Healing Church
9915 Belknap Road
Sugar Land, Texas 77478


Calvin Braun
Orlando & Braun, LLP
3401 Allen Parkway, Suite 101
Houston, Texas 77019
(713) 521-0800
(713) 521-0842 fax

ATTORNEYS FOR DEBTOR


**March 8, 2011**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 10-35919-H4-11 |
| CHRIST HEALING CHURCH | § | |
| | § | |
| Debtor | § | |
| | § | CHAPTER 11 PROCEEDING |
| | § | |
| | § | |

## DEBTOR'S PLAN OF REORGANIZATION

Christ Healing Church (referred to hereinafter as "Healing" or the "Debtor"), proposes this

Plan of Reorganization (the "Plan") pursuant to Section 1121 of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS

For purposes of the Plan, the following terms shall have the respective meanings specified as follows:

1.01    "Allowed Claim" or "Claim" shall mean (i) a Claim evidenced by a proof of claim filed on or prior to the Bar Date which is either not scheduled by the Debtor or scheduled by the Debtor as disputed, contingent or unliquidated as to which no objection has been made within 90 days after the Effective Date or (ii) a Claim scheduled by the Debtor and not shown as disputed, contingent or unliquidated, or (iii) a Claim for payment for compensation as provided for under Section 507(a) of the Bankruptcy Code which is allowed, approved and ordered paid by the Bankruptcy Court, or (iv) any Claim ordered paid by the Bankruptcy Court.  An Allowed Claim may refer to a Secured Claim, Unsecured Claim or Section 507 Claim (Unsecured Priority Claim) as the context provides.

1.02    "Allowed Secured Claim" shall mean the amount of any Secured Claim which is allowed by the Court pursuant Section 506(a) of the Bankruptcy Code.

1.03    "Bankruptcy Code" shall mean the Bankruptcy Code of 1978 as contained in Title 11 U.S.C. §101 et. seq. and amendments thereto.

1.04    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Texas, Houston Division, having jurisdiction over the captioned case.

1.05    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as amended and prescribed under 28 U.S.C. §2075 (1978), applicable to the captioned Chapter 11 reorganization case.

1.06    "Bar Date" shall mean the deadline established by the Bankruptcy Court as the Bar Date with respect to the Debtor and is the date after which any Claims which must be filed will be void and disallowed for purposes of voting or distribution.

1.07    "Confirmation Date" shall mean the date the Plan is confirmed by the Bankruptcy Court.

1.08    "Consummation of the Plan" shall mean that certain event that shall occur upon the execution and delivery of documents by the Debtor.

1.09    "Creditor" shall mean any entity holding a Claim.

1.10    "Debtor" or "Healing", Christ Healing Church, Texas non-profit corporation created under the laws of the State of Texas on June 19, 1991 pursuant to that certain Articles of Incorporation, as subsequently amended, supplemented and/or restated.  The Debtor in the captioned Chapter 11 case.

1.11    "Disclosure Statement" shall mean Debtor's Disclosure Statement, as may be amended or supplemented, filed by the Debtor pursuant to the Plan.

1.12    "Effective Date" shall mean the later of (i) the date that is fourteen (14) days after the Order confirming the Plan is entered on the docket by the Clerk of the Bankruptcy Court, unless an appeal from such order is filed and a stay pending appeal is issued, or (ii) the date one day after the date on which an order is entered denying or dissolving a stay of the order confirming the Plan incidental to an appeal from the order confirming the Plan.

1.13    "Filing Date" shall mean July 12, 2010, the date the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

1.14    "Plan" shall mean this Plan of Reorganization in its present form or as it may be modified, amended or supplemented.

1.15    "Property" shall mean all real property and inventory, chattel paper, accounts, contract rights, general intangibles and equipment, together with a list of specific equipment.

1.16    "Secured Claim" shall mean any Claim against the Debtor's estates for which the holder thereof claims a lien, security interest, or other encumbrance on the property of the Debtor as security for repayment thereof, and which lien, security interest or other encumbrance has been properly perfected as required by law, to the extent of the value of the security.

1.17   "Unsecured Claim" shall mean a Claim against the Debtor incurred prior to the Filing Date (or deemed by law to have been incurred prior to the Filing Date), other than a Secured Claim or a Claim entitled to priority pursuant to Section 507(a) of the Bankruptcy Code.

1.18   "Acceptance" shall mean to date the Plan of Reorganization is confirmed by the Court (see Confirmation Date).

A term in this Plan not otherwise defined herein but used in the Bankruptcy Code shall have the definition assigned to such term in the Bankruptcy Code.

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan provides for the division of Claims and Interests into four (4) classes.

2.01   Class 1.

Class 1 shall consist of the Allowed Claims entitled to priority under Section 507(a)(1) through (7) of the Bankruptcy Code, including the fees for services rendered and expenses incurred by the court-appointed counsel and other professionals for the Debtor through the Closing Date.

2.02   Class 2.

Class 2 shall consist of the Allowed Secured Claims of Foundation Capital Resources, Inc., loan against the bankruptcy estate pursuant to a promissory note dated June, 6, 2008 and executed by the Debtor as Makers, payable to the order of Foundation Capital Resources, Inc., in the original principal sum of $982,000.00.

2.03   Class 3.

Class 3 shall consist of the Allowed Secured Claim of Colorado Electric Supply, Ltd. d/b/a City Electric Supply ("City"), against the bankruptcy estate pursuant to a filed Mechanic's and Materialsman's Lien dated March 13, 2009 filed withe the real property records of Fort Bend County in the amount of $5,489.63. Said amount of debt is actually $3,019.13 and City shall amend it previously filed proof of claim.

2.04   Class 4.

Class 4 shall consist of the Disputed Partially Secured and Unsecured Claim of Keaton Construction Company, LLC. ("Keaton"), against the bankruptcy estate pursuant to a filed Mechanic's and Materialsman's Lien dated February 24, 2009 filed withe the real property records of Fort Bend County in the amount of $224,129.12.

2.05    Class 5.

Class 5 shall consist of all Allowed Nonpriority Claims of Unsecured Creditors. According to the Debtor's Schedules A Through J filed with the Bankruptcy Court, the unsecured claims in Class 4 have been estimated at approximately $15,709.38.

Additionally, any lawsuits filed against the Debtor related to pre-petition claims, to the extent such claims are not covered by insurance, and any allowed claims arising from rejection of executory contracts and unexpired leases will also be included in this class.

## ARTICLE III

## TREATMENT OF CLASSES UNDER THE PLAN

3.01    **Class 1.  Administrative Claims (Not Impaired)**.  Class 1 shall consist of the Allowed Claims entitled to priority under Section 507(a)(1) through (7) of the Bankruptcy Code, including the fees for services rendered and expenses incurred by the court-appointed counsel and other professionals for the Debtor through the Closing Date.

The claims in Class 1 shall be treated in the following fashion:  Each Creditor in Class 1 shall be paid in cash on the Closing Date if such Creditor's Claim has matured or been approved or allowed by the Bankruptcy Court, if such approval or allowance is required.  Each such Claim requiring approval or allowance of the Bankruptcy Court shall be paid in cash upon approval or allowance by the Bankruptcy Court, unless each such Creditor agrees to a different treatment.  All fees for services rendered and expenses incurred after the Closing Date by court-appointed counsel and other professionals for the Debtor shall be paid by the Debtor in the ordinary course of its business without the necessity of filing fee applications or seeking approval or allowance of the Bankruptcy Court.  The total amount of post-Filing Date fees and expenses of counsel for the Debtor will depend upon factors which are, to a large extent, outside the control of the Debtor, such as the ability of the Debtor and its Creditors to agree on the treatment afforded to Creditors under the Plan and the nature and extent of pre-Confirmation Hearing legal actions taken by the Debtor's Creditors.  Subject to such uncertainties, it is anticipated that the post-Filing Date fees and expenses of Debtor's counsel incurred prior to the conclusion of the Confirmation Hearing will be approximately $25,000.00.

Additionally, there will be post petition trustee quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) for the third and fourth quarters which will be paid with the proceeds from the operation of the business.

The Debtor in Possession shall be responsible for the timely payment of the fees incurred pursuant to 28 U.S.C. §1930(a)(6).  After confirmation, the Debtor in Possession shall file with the Court and serve on the United States Trustee a monthly financial report for each month (or portion thereof) the case remains open in a format prescribed by the United States Trustee and provided to the Debtor by the United States Trustee.

3.02.   **Class 2 Secured Claim- Foundation Capital Resources, Inc. (Impaired)**

Class 2 shall consist of the Allowed Secured Claims of Foundation Capital Resources, Inc., loan against the bankruptcy estate pursuant to a promissory note dated June, 6, 2008 and executed by the Debtor as Makers, payable to the order of Foundation Capital Resources, Inc., in the original principal sum of $982,000.00.

The Allowed Secured Claim of Capital, shall be deemed current as to all pre-petition arrearage and shall be cured as of the Effective Date. Said loan has previously converted to permanent financing as per the promissory note terms.  The promissory note shall be modified as follows: (1) One month after the Effective Date the monthly payments to Capital shall be $6,000.00 for the first 12 months to allow the debtor some time to develop business and generate income. Thereafter, Capital will increase the monthly installments of $1,000 each year for the next 4 years (e.g. $7,000.00 months 13-24, $8,000 months 25-36, $9,000 months 37-48 and $10,000 months 49-60).  Thereafter, upon the expiration of the 5 year stair step payments, the lender shall modify the existing promissory note with a fully amortize the remaining loan balance over 25 years with monthly payments of $9,223.72 each at a 8.5% fixed  rate of interest. Further, said previously stated prepayment penalty language contained within the promissory note shall be deleted, null and void upon the Effective Date.

Notwithstanding any provisions to the contrary in the Debtor's Plan, the Debtor's Disclosure Statement or any orders approving Debtor's Plan and Disclosure Statement, Foundation Capital Resources, Inc., shall retain its first priority lien in and against Debtor's real and personal property.

3.03.   **Class 3.  Secured Claim- Colorado Electric Supply, Ltd   (Impaired)**

Class 3 shall consist of the Allowed Secured Claim of Colorado Electric Supply, Ltd. d/b/a City Electric Supply ("City"), against the bankruptcy estate pursuant to a filed Mechanic's and Materialsman's Lien  dated March 13, 2009 filed withe the real property records of Fort Bend County in the amount of $5,489.63. Said amount of debt is actually $3,019.13 and City shall amend it previously filed proof of claim.

The Allowed Secured Claim of City shall be paid in full over a period of 36 months at a rate of interest of 5% with the first payment of principal and interest being due 30 days after the Effective Date in the amount of $90.50. Said payments shall continue thereafter monthly until paid in full, upon which said lien shall be released by City.

3.04.   **Class 4.   Partially Secured and Unsecured Claim- Keaton Construction Company, LLC (Impaired)**

Class 4 shall consist of the Disputed Partially Secured and Unsecured Claim of Keaton Construction Company, LLC. ("Keaton"), against the bankruptcy estate pursuant to a filed Mechanic's and Materialsman's Lien  dated February 24, 2009 filed withe the real property records of Fort Bend County in the amount of $224,129.12.

The Debtor believes said proof of claim is inaccurate as to amounts due and believes that Keaton is in breach of it contract as to duties as general contractor. The Debtor shall seek to litigate this matter within the bankruptcy court. Should the bankruptcy court determine that there is an Allowed Secured Claim of Keaton then it shall be paid in full over a period not to exceed 96 months at a rate of interest of 5% with the first payment of principal and interest being due 30 days after the Effective Date. Said payments shall continue thereafter monthly until paid in full, upon which said lien shall be released by Keaton.

### 3.05.   **Class 5.  Claims of Nonpriority Unsecured Creditors (Impaired)**.

Class 5 shall consist of all Allowed Nonpriority Claims of Unsecured Creditors. According to the Debtor's Amended Schedules A Through J filed with the Bankruptcy Court, the unsecured claims in Class 5 have been estimated at approximately $15,709.38.

Additionally, any lawsuits filed against the Debtor related to pre-petition claims, to the extent such claims are not covered by insurance, and any allowed claims arising from rejection of executory contracts and unexpired leases will also be included in this class.

Each Unsecured Creditor with an Allowed Unsecured Claim (meaning not listed as contingent, unliquidated or disputed within Schedule F or any amendment filed with the Court or if so classified, then determined by the Court to be an allowed valid claim) in Class 5, will be the payee of the global promissory note, each creditors will be paid a pro-rata amount (the pro-rata portion is determined by dividing the allowed claim of each creditor claim by the total amount of all allowed claims) out of the total sum of $15,709.38. The promissory note in the amount of $15,709.38 shall be created with the Debtor's acting as the disbursing agent. Said promissory note shall have a zero (0%) interest rate and be payable over 60 month period with payments to Class 5 to commence the third month after the Effective Date and continue every 90 days thereafter for the 60 month period. The Debtor shall make the first installment of $296.50 thirty (30) days after the Effective Date and continue monthly payments of $296.50 a month for a total of 60 months. Said monthly payments shall be paid into the checking account set up by the Debtors, and styled as Unsecured Creditors Disbursement Account and Case Number. The Debtor shall be discharged of any and all liability upon the entry of the discharge.

### ARTICLE IV

### CRAMDOWN

4.01   In the event any Class rejects the Plan, the Debtor will seek to invoke the provisions of Section 1129(b) of the Bankruptcy Code and confirm the Plan notwithstanding the rejection of the Plan by any Class of Claims or interests.

## ARTICLE V

5.01   <u>Means for Execution of Plan</u>.

Debtor will meet the above described obligations by reducing various cost of operations and continued operations of the church facilities. In addition to the continued contribution income from the congregation.

## ARTICLE VI

## <u>DEFAULT</u>

6.01   Subject to any specific default provisions stated in the Plan Documents, in the event that the Debtor breaches any covenant or provision of this Plan or in the underlying documentation evidencing the secured indebtedness, and thereafter fails to remedy or resolve such breach within sixty (60) days from the date of receipt of written notice of such breach, then any Creditor with an Allowed Claim, at its option, may declare that  the Debtor is in default of this Plan.  Upon the declaration of default as provided herein, the declarant may exercise any remedies available under law.

## ARTICLE VII

## <u>EXECRUTORY CONTRACTS</u>

7.01   The Plan seeks to assume all executory contracts excluding those specifically rejected during the Reorganization Case.

## ARTICLE VIII

## <u>MODIFICATION OF THE PLAN</u>

8.01   The Debtor may propose amendments and modifications of this Plan through the Confirmation Date, with leave of the Bankruptcy Court upon appropriate notice.  After the Confirmation Date, the Debtor may, with approval of the Bankruptcy Court, so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of confirmation in such manner as may be necessary to carry out the intendment of this Plan.  After the Confirmation Date, the Debtor may, with approval of the Court, modify the Plan as to any Class, even though such modification materially affects the rights of the Creditors or Interest Holders in such Class; <u>provided</u>, <u>however</u>, such modifications must be accepted as to Classes of Creditors by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Claims voting in each such Class and fifty-one percent (51%) in number of Allowed Claims voting in such Class, and as to Classes of Interest holders by at least sixty-six and two-thirds percent (66-2/3%) in amount of Allowed Interests voting in each such Class; and <u>provided</u>, <u>further</u>, that additional disclosure material needed to support such

modification shall be approved by the Court in the manner consistent with Section 1125 of the Bankruptcy Code and Rule 3017 of the Federal Rules of Bankruptcy Procedure. With respect to all proposed modifications to the Plan, both before and after confirmation, Debtor shall comply with the requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE IX

## JURISDICTION OF THE COURT

9.01    The Court shall retain exclusive jurisdiction of this case after the Confirmation Date until the case is closed with respect to the following matters:

A.    to classify, allow or disallow Claims and direct distributions of funds under the Plan and to hear and determine any controversies pertaining thereto;

B.    to hear and determine any and all applications, contested matters, or adversary proceedings arising out of or related to this Plan or as otherwise might maintainable under the applicable jurisdictional scheme of the Bankruptcy Code prior to confirmation;

C.    to enter and implement such orders as may be appropriate in the event the order confirming this Plan is for any reason stayed, reversed, revoked or vacated;

D.    to liquidate or estimate damages or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated claim;

E.    to adjudicate all Claims to any lien on any of the Debtor's assets or any proceeds thereof;

F.    to approve the sale of any assets of the Debtor and to make such orders as are necessary or appropriate to carry out this Plan;

G.    to hear and determine matters concerning state, local and federal taxes pursuant to Sections 346, 505, 525 and 1146 of the Bankruptcy Code;

H.    to hear and determine any dispute or any other matter regarding the Debtor's breach of this Plan or any matter relating to this Plan; and

I.    to maintain exclusive original jurisdiction for claims under Sections 544, 545, 546, 547, 548, 549 and 550 of the Bankruptcy Code, which can be maintained by the Debtor.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.01  As provided for in Section 1141(d) of the Bankruptcy Code, the provisions of Debtor's Plan shall bind the Debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the Claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.  As provided for in Section 1141(d) of the Bankruptcy Code confirmation of Debtor's Plan vests all of the property of the estate in the Debtor.  Confirmation of the Plan shall act as a discharge of the Debtor to the full extent permitted by §1141(d)(1) of the Bankruptcy Code, except as otherwise may be provided in the Plan.  After confirmation of the Debtor's Plan, the property dealt with by the Plan is free and clear of all claims and interests of creditors and equity security holders, except to the extent as provided for in the Debtor's Plan. The Order confirming the Plan shall contain an appropriate provision to effectuate the terms of this paragraph 10.01 of the Plan.

Respectfully submitted this 8th  day of March, 2011.

CHRIST HEALING CHURCH


By:__/s/ Victor Ade Iyamu_____
        Victor Ade Iyamu, Pres.




OF COUNSEL:

CALVIN BRAUN
ORLANDO & BRAUN LLP
Texas State Bar No. 00783713
3401 Allen Parkway, Ste. 101
Houston, Texas  77019
(713) 521-0800
(713) 521-0842 fax

COUNSEL FOR DEBTOR

EXHIBIT B

B6A (Official Form 6A) (12/07)

In re  **Christ Healing Church**                    Case No.  <u>10-35919-H4-11</u>
                                                              (if known)

*1st AMENDED*
## SCHEDULE A - REAL PROPERTY

| Description and Location of Property | Nature of Debtor's Interest in Property | | Current Value of Debtor's Interest In Property, Without Deducting Any Secured Claim or Exemption | Amount Of Secured Claim |
|---|---|---|---|---|
| 9915 Belknap Rd, Sugar Land, TX 77478 Tract Thirty-Seven  (37) in Richmond Roads Farms, a subdivision in Fort bend County, Texas according to the map or plat thereof recorded in Volume 228, Pages 90, 90A and 90B of the Deed Records of Fort Bend County. | Fee Simple | | $1,200,000.00 | $1,361,531.53 |
| | | Total: | $1,200,000.00 | |

(Report also on Summary of Schedules)

B6B (Official Form 6B) (12/07)

In re  **Christ Healing Church**                                      Case No.   **10-35919-H4-11**
                                                                                          (if known)

## SCHEDULE B - PERSONAL PROPERTY

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|
| 1. Cash on hand. | X | | |
| 2. Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | Chase  Checking- xx7254 | $8,000.00 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | |
| 4. Household goods and furnishings, including audio, video and computer equipment. | X | | |
| 5. Books; pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | |
| 6. Wearing apparel. | X | | |
| 7. Furs and jewelry. | X | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | |
| 10. Annuities.  Itemize and name each issuer. | X | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Christ Healing Church**                                  Case No.   **10-35919-H4-11**
                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 1*

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|
| 11. Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars.  (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | |
| 12. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.  Give particulars. | X | | |
| 13. Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | |
| 14. Interests in partnerships or joint ventures. Itemize. | X | | |
| 15. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | |
| 16. Accounts receivable. | X | | |
| 17. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled.  Give particulars. | X | | |
| 18. Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Christ Healing Church**                                    Case No.   **10-35919-H4-11**
                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 2*

| Type of Property | None | Description and Location of Property | | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 19. Equitable or future interests, life estates, and rights or powers exercis-able for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21. Other contingent and unliqui-dated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims.  Give estimated value of each. | X | | | |
| 22. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24. Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 26. Boats, motors, and accessories. | X | | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Christ Healing Church**                                    Case No.  **10-35919-H4-11**
                                                                              (if known)

## SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 3*

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|
| 27. Aircraft and accessories. | X | | |
| 28. Office equipment, furnishings, and supplies. | | Senior elders chair (2) - $325<br>Elders Chair - $210<br>Pulpit (stand) - $175<br>Candle stands (3) - 2,625<br>Plastic chairs - $361<br>Flower stands (6) - $225<br>Fans (6) - $165<br>Guitars (2) - $500<br>Keyboard Synthesizer - $300<br>Sound System - $600<br>Drum Set - $250<br>Speakers - $1294<br>Amplifiers (sound mixer) - $225<br>Guitar Amplifier - $100<br>Bongos (set - 3) - $300<br>Incense stand & pot - $1,050<br>Crucifix & stand - $1,425<br>Wall air conditioner (4) - $375 | $10,505.00 |
| | | Stove - $445<br>Wall Picture - $33<br>Entertainment Center w/speakers - $133<br>Vacuum Cleaners (4) - $195<br>Steel fold r (5) - $188<br>Table - $38<br>Cooler - $23<br>Plastic Containers (3) - $23 | $1,078.00 |
| | | Chair (2) - $75<br>Mattress (3) - $297<br>Chair (2) - $98<br>Wall clock - $23<br>Plastic chair - (91) - $319<br>Wall picture - $23<br>Lamp stand - $39 | $5,872.00 |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Christ Healing Church**                                        Case No.   **10-35919-H4-11**
                                                                                    (if known)

## SCHEDULE B - PERSONAL PROPERTY

*Continuation Sheet No. 4*

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|
| | | Leather Sofa - $138<br>Leather love seat - $238<br>Lamp stand - $38<br>Chair (4) - $196<br>Bedroom set - $600<br>King size bed & mattress (3) - $850<br>Dining set - $188<br>File cabinet - $45<br>Refrigerator (2) - $400<br>Freezer - $230<br>Soda machine (2) - $425<br>Steel folding chair (33) - $1,000<br>Tractor Lawnmower - $650 | |
| 29. Machinery, fixtures, equipment, and supplies used in business. | | Desk - $325<br>Leather Chair - $113<br>Love Seat - $188<br>Computer desk - $93<br>Chair (2) - $56<br>Refrigerator - $445<br>Computer - $450<br>Monitor - $225<br>Printer - $160<br>TV - $237<br>File cabinet (2) - $95<br>Love seat (3) - $635<br>Desk (2) - $175<br>Glass office desk - $136<br>Water cooler - $175<br>Chairs (4) - $130 | $3,638.00 |
| 30. Inventory. | X | | |
| 31. Animals. | X | | |

B6B (Official Form 6B) (12/07) -- Cont.

In re  **Christ Healing Church**                                              Case No.   __10-35919-H4-11_____
                                                                                              (if known)

# SCHEDULE B - PERSONAL PROPERTY
*Continuation Sheet No. 5*

| Type of Property | None | Description and Location of Property | Current Value of Debtor's Interest in Property, Without Deducting any Secured Claim or Exemption |
|---|---|---|---|
| 32. Crops - growing or harvested. Give particulars. | X | | |
| 33. Farming equipment and implements. | X | | |
| 34. Farm supplies, chemicals, and feed. | X | | |
| 35. Other personal property of any kind not already listed.  Itemize. | X | | |
| | | __5__ continuation sheets attached    Total  > | $29,093.00 |

(Include amounts from any continuation sheets attached.  Report total also on Summary of Schedules.)